### RIECK v. HEINER, Collector of Internal Revenue.

District Court, W. D. Pennsylvania. April 21, 1927.

No. 3555.

1. Internal revenue ☞7(17)—Computation, for income tax, of cost of real estate sold by deducting 2 per cent. per year from 1913 value, held proper.

In ascertaining, for income tax purposes, profit on real estate sold, computation of cost by deducting from the 1913 value 2 per cent. per annum for decay and depreciation *held* proper.

2. Internal revenue ☞7(22)—Depreciation is properly considered under income tax statutes in computing profit or loss on sale of real estate (Revenue Act 1918, § 202 [a], and [1] and [2] thereof, and Revenue Act 1921,

§ 202 [a], and [b], and [1], [2], and [3] thereof [Comp. St. § 6336⅛bb]).

In computing for income tax purposes profit or loss on sales of real estate, depreciation is, in view of Revenue Act 1918, § 202 (a), and (1) and (2) thereof, and Revenue Act 1921, § 202 (a), and (b), and (1), (2), and (3) thereof (Comp. St. § 6336⅛bb), a proper element to be considered.

3. Internal revenue ☞7(11)—All factors must be considered in computing, for income tax, profit or loss on real estate sold; statutes merely designating 1913 value as computation basis (Revenue Act 1918; Revenue Act 1921).

In income tax computation of gain or loss on property sold, every proper factor that would go to make up profit or loss should be considered; Revenue Act 1918 (40 Stat. 1057) and Revenue Act 1921 (42 Stat. 227), not providing that the gain or loss should be the difference between the cost or fair value on March 1, 1913, and the sale price, but merely providing that said cost or value should be the basis of computation.

4. Internal revenue ☞38(12)—In computing income tax on real estate sold, one asserting there has been no decay or depreciation has burden of proof.

That buildings do decay and depreciate is a matter of common knowledge; hence, in computation of income tax due on real estate sold, burden of proving that no decay or depreciation has taken place rests upon him who asserts it.

5. Internal revenue ☞7(24)—Premiums on life insurance policies of taxpayer are not allowable as deductions from taxable income, though payable to insured's estate (Revenue Act 1918, § 215[d], and Revenue Act 1921, § 215 [a] [4], being Comp. St. § 6336⅛gg).

In view of Revenue Act 1918, § 215 [d], and Revenue Act 1921, § 215 [a], [4], being Comp. St. § 6336⅛gg, life insurance premiums paid upon policies issued upon the life of a taxpayer are not proper items of business expense allowable as deductions from taxable income, even though the policy be made payable to the estate of the taxpayer.

6. Internal revenue ☞7(24)—Premium on life insurance policy payable to one's estate and assigned as collateral cannot be deducted from income tax as business expense.

The fact that a life insurance policy, payable to one's estate, is assigned to a bank as collateral security for a loan to the insured, does not make premium payments a business expense to be deducted from income tax payments.

At Law. Action by Edward E. Rieck against D. B. Heiner, Collector of United States Internal Revenue for the Twenty-Third District of Pennsylvania. Judgment for defendant.

Jas. Walton, of Pittsburgh, Pa., for plaintiff.

J. D. Meyer, U. S. Atty., and W. J. Aiken, Asst. U. S. Atty., both of Pittsburgh, Pa.,

and A. W. Gregg and F. W. Dewart, Asst. U. S. Attys., both of Washington, D. C., for defendant.

SCHOONMAKER, District Judge. This is an action at law to recover additional income taxes for the years 1920 and 1921, assessed against the plaintiff by the Commissioner of Internal Revenue and paid by the plaintiff under protest. These taxes grew out of additional assessments made by the Commissioner, owing to his recomputation of plaintiff's returned profit on the sales of certain real estate and the disallowance of life insurance premiums paid by plaintiff and claimed by him as allowable deductions from his taxable income. A jury trial was waived, and a stipulation of certain agreed facts was filed.

In addition to the facts agreed upon, the plaintiff sought to show by the testimony of certain witnesses that there was no basis in fact for the depreciation deducted by the Commissioner from the cost or fair value of the real estate on March 1, 1913, involved, because there had been no depreciation in the buildings upon the real estate. The proof failed in this particular, and we find that the buildings upon this real estate were subject to depreciation according to the ordinary rule adopted by the Commissioner under the regulations; i. e., 2 per cent. per annum from the cost or fair value thereof on March 1, 1913. We therefore find the facts of this case to be as shown in the stipulation of agreed facts. Briefly stated, these are:

[1] The plaintiff sold certain real estate in the years 1920 and 1921, and in his income tax returns for those years accounted for the profit or loss on those transactions by deducting from the cost price or fair value thereof on March 1, 1913, a certain depreciation from the value of the building (which was much less than the depreciation figured according to the 2 per cent. per annum rule used under the regulations), and then taking the difference between that result and the sale price as the profit or loss on the real estate sold. The Commissioner deducted from the cost or fair value on March 1, 1913, of this real estate, depreciation figured at the rate of 2 per centum per annum, and then took the difference between that result and the sale price, thereby increasing the taxable income of the plaintiff for the two years in question as follows: For the year 1920 by $940; for the year 1921 by $2,282.50.

In the year 1920 the plaintiff deducted from his taxable income $8,278.40 paid by

him as an insurance premium on a certain policy of insurance in the Mutual Life Insurance Company, issued August 20, 1920, upon the life of the plaintiff under the ordinary life plan and payable to his estate, which policy was on December 8, 1920, assigned by the plaintiff to the Diamond National Bank of Pittsburgh as collateral security for the plaintiff's loans at this bank. This policy was taken out and assigned to the bank at its request and was released and reassigned by the bank to the plaintiff on December 24, 1924. In the year 1921, the plaintiff likewise deducted from his taxable income the premiums paid on this policy in the sum of $6,914.70. Both of these deductions were disallowed by the Commissioner, and the taxable income of the plaintiff for these years was increased accordingly. The increased tax thus assessed against the plaintiff by the Commissioner was paid, with accrued interest, by the plaintiff, under protest on July 27, 1926, as follows: For the year 1920, $4,889.44; and for the year 1921, $6,429.17.

On this state of facts we must find that the plaintiff cannot recover, and that judgment must be entered for the defendant.

[2, 3] As to the depreciation item, the plaintiff contends that it is not a proper element to be taken into consideration in the computation of profit or loss on the sale of real estate under the terms of the revenue statutes (Act of 1918, § 202 (a), 202 (a) (1) (2), 40 Stat. 1057, c. 18, and Act of 1921, § 202 (a), 202 (b), 202 (b) (1), 202 (b) (2), 202 (b) (3), 42 Stat. 227, c. 136 (Comp. St. § 6336-⅛bb). However, it will be noted that both of these statutes merely fix the cost or fair value on March 1, 1913, as the basis of the computation for ascertaining the gain or the loss. There is no provision that the gain or the loss shall be the difference between the cost or fair value on March 1, 1913, and the sale price. There is nothing in the sections referred to which prevents the taking into consideration of all proper elements for the purpose of ascertaining the cost. Surely every proper factor that would go to make up the profit or the loss should be taken into account. The plaintiff himself, in his sworn tax return, recognized depreciation as a proper element to be considered in the computation of the gain or the loss. He thus admits the principle that depreciation is a proper factor to be considered, for he used it as one of the elements in computing his income tax liability for the years in question.

[4] It is really not the fact of depreciation but the amount thereof that is involved in this suit, for the plaintiff is not seeking to re-

cover the tax paid by him on his own computation as erroneously made. The testimony offered by the plaintiff on the subject of depreciation is clearly insufficient to take the buildings on the real estate involved out of the class of buildings subject to depreciation charges under the regulations. That buildings do decay and depreciate is a matter of common knowledge. The burden of proving it would be upon him who asserts that no decay or depreciation has taken place. However, the plaintiff finds no fault with the rule adopted by the Commissioner for figuring the amount of depreciation, if the buildings are subject to depreciation charges at all, but conterts himself in asserting that no depreciation can be charged under the statute, and that, even if it could be legally charged, no depreciation accrued at all on the plaintiff's buildings because they were kept in a perfect state of repair. His construction of the statute is wrong. His testimony fails to show that the buildings were not subject to ordinary decay and depreciation.

The plaintiff cites case of Ward v. Hopkins (United States District Court, Northern District of Texas, unreported), and Ludey v. U. S., 61 Ct. Cls. 126 (decided Nov. 9, 1925) as supporting his construction of the statute. We must disagree with the reasoning of these cases. We hold that, had Congress intended that the gain or loss was to be determined merely by taking the difference between the cost, or fair value on March 1, 1913, and the sale price, it would have so provided by proper words, and surely would not in that case have referred to the cost or fair value on March 1, 1913, as the *basis* of the computation, which can only mean that such cost or fair value is the primary figure in the computation of gain or loss. All proper elements that enter into the determination of the gain or loss must be considered. As an illustration, if after purchase on or after March 1, 1913, additions or improvements were made to buildings upon real estate, the cost of such addition or improvement is a proper factor to be considered. To interpret the statute as plaintiff requests us would deny to the taxpayer that very proper element in the computation of gain or loss.

The depreciation of buildings is a proper subject of annual deductions from the taxable income of taxpayers. To permit a taxpayer to take an annual deduction for depreciation to buildings and then not take into consideration that depreciation in the computation of gain or loss on sale of the property would be to give the taxpayer credit twice for that depreciation. The statute should not be construed to give that result unless its plain language demands such a construction. There are no words in the statute which require such a forced construction.

We coincide exactly with the views expressed by the United States Board of Tax Appeals in Appeal of Even Realty Co., volume 1, U. S. Tax Rep. Appeals, p. 355. In that case the taxpayer took no account of depreciation to buildings on its real estate during its ownership, and the Board held that, in ascertaining loss or gain on the sale of this real estate, due allowance must be made for exhaustion, wear and tear, and obsolescence of the building thereon, during the period of ownership, whether or not deductions have been taken therefor in prior tax returns. In this case, Commissioner Ivins, in discussing the statute, said:

"There is no ground for believing that Congress, in using the word *'basis'* intended it to carry any other than its commonly accepted meaning. The New American Encyclopedic Dictionary defines *basis* as follows:

"A. Ordinary language:

"I. Lit. Of things which are or are assumed to be material: That on which anything rests or is supposed to rest; the lowest part of anything, as the foundation of a building, etc.

"II. Of things immaterial: The fundamental principle, groundwork, or support of anything.

"Webster's New International Dictionary says:

"Basis: 1. The foundation of anything; that on which a thing rests; the base. * * * 4. The principal component part of a thing. 5. The groundwork; the first or fundamental principle; that which supports or sustains.

"We have no hesitation in holding that Congress, in using the word *'basis'* meant nothing but *starting point* or *primary figure* in the computation of gain or loss, and had no intention of restricting that computation to a simple subtraction of the basis from the selling price or vice versa. It expected the computation to include all adjustments necessary to a logical ascertainment of gain or loss. The only reason for using the word at all was to take care of the different situations arising when the property disposed of had been acquired (a) before and (b) on or after March 1, 1913. It fixed the starting point or primary figure of computation in the respective cases, but did not attempt to define every step of the computation under varying

circumstances. In some cases, as when a taxpayer buys a security for one price and sells it for another, a simple subtraction is all that is necessary to determine his gain or loss. But, in other cases, either the basis or the sale price must be adjusted before making the subtraction in order to have the difference truly represent the gain or loss."

As to the life insurance premiums, the plaintiff claims that they are properly deductible business expenses because the policy was assigned to a bank as collateral security for business loans, and that these premiums are not within the inhibitions either of the Revenue Act of 1918 or 1921.

Section 215 (d) of the Act of 1918, and section 215 (a) (4) of the Act of 1921 (being Comp. St. § 6336⅛gg) contain the same restrictions, i. e.:

"That in computing net income, no deduction shall, in any case, be allowed in respect of, * * * (d) Premiums paid on any life insurance policy covering the life of any officer, or employee, or of any person financially interested in any trade or business carried on by the taxpayer, when the taxpayer is directly or indirectly a beneficiary under such policy."

[5, 6] In the first place, life insurance premiums paid upon policies issued upon the life of a taxpayer are not, under the statute, proper items of business expense allowable as deductions from taxable income, even though the policy be made payable to the estate of the taxpayer. Such payments are rather in the nature of a speculative investment for the benefit of the taxpayer's estate, and are no more a business expense than would be a like investment in bonds which might later be assigned as collateral security for the taxpayer's debts. The fact that the policy is assigned to a bank as collateral security for the repayment of loans would not change the premiums paid to a business expense, nor change it back to an investment when the loan was paid off.

In addition, we are of the opinion that the premiums paid upon this policy upon plaintiff's life come within the inhibitions of the statute. The policy covers the life of a person financially interested in the plaintiff's business; i. e., the plaintiff himself. The plaintiff is directly or indirectly a beneficiary under the policy. It is payable to his estate. If he dies while the policy is up as collateral for debt, the insurance will go to the bank, thereby reducing the debt to the amount of the insurance and indirectly benefiting the taxpayer's estate. If the loss be repaid and the collateral be released, then the insurance would be directly paid to the

taxpayer's estate and thereby become a direct benefit.

We therefore conclude on the whole case that the additional taxes assessed against the plaintiff were legally and properly assessed against him and may not be recovered back.

Let judgment be entered in favor of the defendant and against the plaintiff, with costs.